UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN PARK, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br>v.<br><br>COLE HAAN, LLC; APAX PARTNERS WORLDWIDE LLP,<br><br>                                   Defendant. | Case No.: 17cv1422-LAB (BGS)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>**[DOCKET NUMBER 6.]** |

     Kevin Park alleges that on June 25, 2017, he bought a pair of shoes for his wife at a Cole Haan outlet, supposedly at a 50% discount. He alleges the shoes were not in fact discounted, and he would have either not purchased the shoes or not paid as much for them had he not believed he was getting a discount.

     This is a putative class action. Park brings claims under California's Unfair Competition Law, False Advertising Laws, or Consumer Legal Remedies Act. He seeks to represent a class of all people who bought a product made for the Cole Haan outlet in California, provided the product they bought bore an original price. He seeks restitution to the class for their losses, unspecified injunctive relief, and attorney's fees and costs.

/ / /

Defendants have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Defendant Apax Partners Worldwide LLP also moves to dismiss for lack of personal jurisdiction.

**Legal Standards**

A Rule12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

At the pleading stage, the Court may consider not only the complaint itself, but also documents it refers to, documents whose authenticity is not questioned, and matters judicially noticed. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). The Court also need not accept as true allegations that contradict materials properly subject to judicial notice or incorporated into the complaint. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

/ / /

In assessing the adequacy of a complaint, the Court must look at the complaint itself, and not to explanations provided in the opposition. New or expanded allegations in opposition to a motion to dismiss are considered when deciding whether to grant leave to amend, but are not considered when ruling on a 12(b)(6) motion. *See Schneider v. Cal. Dep't of Corr. & Rehab.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). *See also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Apax's Rule 12(b)(2) challenge to personal jurisdiction is a facial attack, meaning it challenges the sufficiency of the allegations to establish jurisdiction. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 (9th Cir. 1977). To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff is only required to make "a prima facie showing of jurisdictional facts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)). When ruling on such a motion, the Court – as with a Rule 12(b)(6) motion – accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

Subject matter jurisdiction is presumed to be lacking until it is affirmatively shown. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). What is more, the Court must raise and address any questions about subject matter jurisdiction, *sua sponte* if necessary. *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977). This means that, in addition to any challenges to subject matter jurisdiction in the motion to dismiss, the Court must consider any other jurisdictional deficiencies. Subject matter jurisdiction is a "threshold matter," which the Court must determine before proceeding to the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

**Discussion**

    **Subject Matter Jurisdiction**

Before Park filed his opposition, the Court pointed out the primacy of jurisdictional issues, and made clear it takes seriously its obligation to consider jurisdictional issues, *sua*

/ / /

3

*sponte* if necessary. (Docket no. 8 at 1:26–28.) Park was therefore on clear notice that subject matter jurisdiction needed to be addressed.

Park's claims arise under state law, and he relies on the Class Action Fairness Act as the only basis for this Court's exercise of jurisdiction. While he alleges minimal diversity, he alleges no facts giving rise to a reasonable inference that the amount in controversy requirement is met. The Complaint does not mention any facts from which damages might reasonably be inferred, such as how many outlets Cole Haan has in California, how many products are misleadingly marked as discounted, what the prices and discounts are, or how many people were affected. All it says is that the amount in controversy is over $5 million. This bare and unsupported conclusion is not enough. *See Enrequez v. Aurora Loan Servs., LLC*, 509 Fed. Appx. 607, 608 (9th Cir. 2013) (noting plaintiff's obligation to "plead facts sufficient to satisfy the amount in controversy requirement".) *See also KVOS, Inc. v. Associated* Press, 299 U.S. 269, 277–79 (1936) (holding that a complaint alleging the value of relief sought without alleging facts to support that conclusion failed to establish jurisdiction). This is particularly true because, as discussed below, Park has not shown he has standing to seek injunctive relief. If he is including the value of that relief in the total amount in controversy, his conclusion is even less grounded in facts.

Defendants also allege that, because the pleadings show Park signed the Complaint just two days after he made the purchase, he could not have actually relied on their supposed misrepresentation. Specifically, the Complaint was prepared by a law firm and is dated June 27, 2017. Furthermore, it is a verified complaint, and Park verified that he made the purchase on June 25. This, Defendants argue, strongly suggests that Park and his counsel already believed at the time of purchase that the pricing was misleading, and that Park was sent to buy the shoes solely to manufacture an "injury" so he could sue. They point out that June 25 was a Sunday, and that by June 27, Park had hired two law firms, which in turn had drafted a 20-page complaint.

///

This looks suspicious, and ordinarily the Court would hold an evidentiary hearing. But Park's counsel offers the explanation that the June 27 date was a typographical error, and that the Complaint was actually signed on July 13. Park's complaint is so deficient that in the Court's view, this is a likely explanation. Although it is a verified complaint, it contains several *non sequiturs* and shows signs of having been drafted in haste and without much care. (*See, e.g.*, Compl., ¶ 60(b) (prayer for relief, requesting restitution of the class members' "subscription agreement payments"). For now, the Court accepts Park's counsel's admission that this was a careless error, although going forward they must make reasonable efforts to confirm the accuracy of papers they file with the Court. *See* Fed. R. Civ. P. 11(b). This is particularly true because the Complaint is a verified pleading.

Defendants also point out that Park may not seek injunctive relief because he is not at risk of a future injury. That is, because he claims he knows what Cole Haan's pricing and labeling practices are, he would not benefit from injunctive relief requiring Defendants to tell him what they are. Park essentially concedes this point, but argues he has standing for other reasons. He says he could benefit from injunctive relief requiring Defendants to notify customers and to accept returns even if the shoes they bought have been worn.[1] This is subject to exactly the same kind of attack, however. Accepting Park's allegations as true, he now knows what he is buying and he is aware that the "original" price labeling is unreliable. Even assuming he had alleged that he is likely to shop at a Cole Haan outlet again – which he did not – he is not reasonably likely to be deceived again. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)) (holding that a standing requires "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way"). *See also Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113–14 (9th Cir. 2013) (holding that plaintiff lacked standing to enjoin certain practices connected with eye surgery that he had already had and did not intend to

---

[1] At present, he alleges, Cole Haan's return policy does not allow customers to return shoes that have been worn.

repeat). Thus, even supposing he were going to buy more shoes at a Cole Haan outlet, he has no need for a notice telling him what he already knows, or an opportunity to return shoes that he was not deceived into buying.

Park alternatively argues that, as a matter of policy, the Court should afford him standing in order to effectuate California's consumer protection laws. A few courts in this Circuit have so held. *See, e.g., Koehler v. Litehouse, Inc.*, 2012 WL 6217635 at *6 (N.D. Cal., Dec. 13, 2012). But others disagree, for reasons this Court finds convincing.

First, this argument is contrary to binding Supreme Court precedent. "The assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420–21 (2013) (alterations internal quotation marks, and further citations omitted). Second, however important California's consumer protection laws may be, they do not authorize a federal court to set aside Article III standing requirements. "[S]tanding in federal court is a question of federal law, not state law. And no matter its reasons, the fact that a State thinks a private party should have standing . . . . cannot override our settled law to the contrary." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). Third, there are many ways to enforce California's consumer protection laws. The fact that Park has no standing to seek injunctive relief doesn't mean that no one does. Nor is there any reason a claim for injunctive relief cannot be brought in California's courts, provided California's own standing requirements permit it. In short, concerns that California's consumer protection laws are in danger of becoming unenforceable are greatly exaggerated.

**Personal Jurisdiction**

Defendants point out that the Complaint has made no allegations against Apax specifically, so as to establish personal jurisdiction. These include, among other things, minimum contacts with the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). Apax is alleged to be a UK partnership with its headquarters in London. (Compl., ¶ 8.) Park alleges, without providing any details, that both Cole Haan and Apax "have systematic

6

17cv1422-LAB (BGS)

and continuous contacts with the state of California." (*Id*., ¶ 11.) He also alleges that the Court has specific personal jurisdiction over the two entities "because the claims . . . arise directly from **its** specific contacts with the state of California, namely **its** sales of Cole Haan products to California citizens using **billing programs** that violate California law." (*Id*., emphasis added.) This is another example of careless drafting, but it leaves both the Court and Defendants in the dark. Is Park merely alleging that Cole Haan sells shoes in California (which is consistent with the use of "its"), or that both do? And is he alleging that Cole Haan is responsible for pricing practices (referred to here as "billing programs"), or that both are responsible? And if both sell shoes and both are responsible for pricing policies, what is his theory for that?

The remainder of the Complaint aggregates both Defendants, attributing every action to both of them. If, as Park appears to believe, they are acting in concert or engaging in some conspiracy, he has not alleged any facts to support that.

Park agrees that these allegations against Apax are insufficient. He seeks leave to file an amended complaint that either alleges sufficient facts to establish specific jurisdiction against Apax, or to dismiss any claims against Apax. He will be given leave to plead facts to establish specific jurisdiction, if he can. But otherwise he should omit Apax as a party.

**Pleading Standard**

Park's claims are premised entirely on alleged misrepresentations by Defendants. Under Fed. R. Civ. P. 9(b), this requires Park to plead with particularity. In the Ninth Circuit, this means Park must "state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts" that give rise to his claims. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). It also means he must "set forth an explanation as to why the statement or omission complained of was false or misleading." *See Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation marks omitted).

/ / /

The Complaint does not identify what representations Park relied on (signs, price tags, etc.) nor what they said. The only fact he alleges that tends to show the representations were misleading was Park's own interpretation of them. The Complaint refers to the representations by various inconsistent terms. In some places he quotes them as identifying "original" or "regular" prices. (Compl., ¶¶ 1, 2, 4, 5, 18, 19, 20, 21.) In others, he says Defendants "advertised" items at "discount," or in some way referred to "discount" or "sale" prices. (*Id.,* ¶¶ 2, 17, 6(q),[2] 12, 24, 27, 36.) Elsewhere, he mentions "MSRP" prices. (*Id.* at 15:23.) He also says that the representations mislead consumers into believing the items were previously offered for sale in Defendants' regular retail stores.

The Complaint's description of the representations is extremely vague. Most of the terms are in quotation marks, suggesting he is quoting from advertisements, price tags, or something else. But it never says what he is quoting. Nor does he give the complete statement or even an approximation of it. The closest the Complaint comes to a specific allegation about representations as to prices is in paragraph 19, where he says he purchased the "Grand Crosscourt II" for his wife, and that "Defendants represented that the shoes were discounted 50% from the original price of $182."

Park also suggests, without alleging many facts, that Defendants are committing misrepresentations by selling lower-quality items in the outlet that are specially made for the outlet and not for their regular retail stores. Consumers, he alleges, believe they are buying the same items sold in the regular retail outlets. (*See* Compl., ¶¶ 3–4.) The only representation he identifies that could lead to this conclusion, however, is that the specially-made items are marked with a "II" on the shoebox. The example he gives is the "Grand Crosscourt II," the shoes he bought. But he never alleges any facts that suggest he was misled into thinking the Grand Crosscourt II was originally sold in a regular retail outlet,

---

[2] The Complaint restarts the paragraph numbering system in the class allegations section, resulting in duplicate paragraph numbers. Paragraph 6(q) and following are the second paragraphs with these numbers. In future, all paragraphs must be numbered sequentially.

or that he knew whether there was Grand Crosscourt (without the "II"), or that he confused Grand Crosscourt with Grand Crosscourt II. Nor does he allege facts suggesting any other customers were deceived. For example, he does not allege that he or other customers know what models of Cole Haan shoes are sold in retail stores, and are tricked into believing these similarly-named models are the same ones.

In his opposition, Park argues that "value" is the same as "original price," which is incorrect. "Value" by itself is often considered to be a matter of opinion, *see, e.g., Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (Cal. App. 4 Dist. 2002) ("Representations of value are opinions."), while an "original price" or "MSRP" is not. This does not necessarily mean that estimates of value can never be fraudulent or misleading, *see, e.g., Kabbash v. Jewelry Channel, Inc. USA*, 2015 WL 6690236 at *3–4 (C.D. Cal., Nov. 2, 2015), but by itself an unquantifiable statement of "value" is unlikely to be misleading. If Park concedes that Defendants' representations to him concerned the shoes' "value" rather than "original price," this part of his claim is unlikely to succeed.

Park also argues that by selling some products made exclusively for the outlet, which are inferior to products Defendants make for regular retail sale, they are deceiving and cheating customers. He has alleged no facts suggesting what representations, if any, Defendants are making to customers about products sold in the outlet, nor how many products sold in the outlet fall in this category. In his opposition, he cites paragraphs 14–16 of the Complaint, but those paragraphs concern only the Cole Haan brand and the general high quality of the products they sell. The quotations contained in those paragraphs cannot reasonably be construed as promising that all products Defendants sell are of exactly the same quality. And they say nothing at all about the relative quality of products sold in the outlet versus retail stores.

Defendants proffer some photographs of store displays and price tags, and ask the Court to take notice of them. None of these use the word "original," "discount," "sale," or "MSRP." Instead, they use the word "value" to identify what purports to be the value of the shoes being offered, and offer the shoes for sale at less than that value. For example, a

9

pair of "Grand Crosscourt" shoes (without the "II") on its price tag has the word "Value 150" with the "150" crossed out," followed by "Price 112.50". Another display, which is closer to what the Complaint describes, offers a dress shoe under a sign saying "Value $170" and "50% off" followed by "Price as Marked." A third display for casual shoes merely says "Value $130" and gives the price "$99.99". No labels, signs, or other representations concerning a pair of "Grand Crosscourt II" shoes are offered.

These displays and labels do not appear to be the same representations the Complaint relies on, and Park does not admit their authenticity. Accepting the Complaint's allegations as true, as the Court must do at this stage, precludes the possibility that these price tags and signs are authentic. The ones in the photographs Defendants proffer are quite different from the representations the Complaint describes. For example, the Complaint claims Defendants make the same misleading claims as to all products sold in the outlet store, whereas these signs and labels suggest that the representations are different as to different products. The Court therefore cannot take notice of them.

That being said, because they are included in the briefing, Park is now aware of them and would be well advised to investigate and determine whether they are authentic. If they are, the Complaint's allegations about Defendants' representations should be amended to match the facts.

**Conclusion and Order**

The Complaint falls short of even the *Twombly*/*Iqbal* pleading standard, and even shorter of the Rule 9(b) standard. It does not state a claim under California's Unfair Competition Law, False Advertising Laws, or Consumer Legal Remedies Act.

Nevertheless, it is not absolutely clear that Park cannot correct its defects by amendment. The motion to dismiss is **GRANTED IN PART**. The Complaint is **DISMISSED WITHOUT PREJUDICE**, and **WITH LEAVE TO AMEND**. No later than **28 calendar days from the date this order is issued**, Park may file an amended

///

complaint correcting the defects this Order identifies. This includes typographic and formatting problems.

In particular, the amended complaint must plead facts establishing jurisdiction. It is not enough merely to conclude, as the original complaint does, that the amount in controversy exceeds $5 million. Any amended complaint must plead facts showing that this conclusion has a reasonable factual basis. If jurisdictional facts are not adequately pled, this action will be dismissed without prejudice.

In this order, the Court has assumed that Park intends to allege that his claims apply equally to all products sold in the outlet — *i.e.*, that all products are sold using the same misrepresentations and are more cheaply made than those sold in retail stores. Park should make a reasonable investigation to confirm this, and to amend his allegations if necessary, so that they accurately reflect the scope of his claims and their likely monetary value. If the amount in controversy is not met, it is better for all concerned to know this sooner rather than later.

Any amended complaint must not include claims for injunctive relief, unless Park can plead facts showing he has standing under a theory consistent with this order.

Park should bear in mind that the Court has found Defendants' criticism of the Complaint's allegations to be generally well-taken. After a reasonable investigation, *see* Fed. R. Civ. P. 11(b), he should therefore correct as many as he can, and supply the missing factual allegations. He should not omit facts needed to support his claims on the assumption that he will be given another chance to meet the pleading standard. Rather, the Court's working assumption will be that if he does not allege important facts, it is because he cannot.

/ / /
/ / /
/ / /
/ / /
/ / /

If Park does not file an amended complaint within the time permitted, this action will be dismissed without leave to amend.

**IT IS SO ORDERED**.

Dated: July 16, 2018

_____
Hon. Larry Alan Burns
United States District Judge